DETTMAN, Respondent, v. NELSON TESTER COMPANY, INC., Appellant.

*March 3—April 7, 1959.*

For the appellant there were briefs by *Langer & Cross* of Baraboo, and oral argument by *Clyde C. Cross*.

For the respondent there was a brief and oral argument by *Vaughn S. Conway* and *Kenneth H. Conway,* both of Baraboo.

MARTIN, C. J. Appellant, an Iowa corporation with offices in Waterloo, Iowa, is the manufacturer of the Nelson leakage tester, Model A5567, 110 V. and 60 cycles.

Fred Dettman was a resident of Sauk county, Wisconsin. It is alleged that on November 2, 1954, while working in his employment at Edwards Pontiac Company in Baraboo and using the Nelson tester, Dettman received an electrical shock causing injuries which resulted in his death on November 13, 1954. It is further alleged that the machine was inherently dangerous; that this fact was known or should have been known to the defendant; and that no warning of the danger was given to users of the machine.

Appellant maintains a small manufacturing plant at Waterloo, Iowa. All the manufacturing and office work of the company is done by the two individuals upon whom service of the summons was made, Paul Briner and Richard Olson, its vice-president and secretary, respectively. Louis Nelson is president of the corporation. None of the officers are residents of Wisconsin. Service of the summons was on the company at its place of business in Waterloo.

Sec. 262.09 (4), Stats., provides:

"If the defendant is a foreign corporation (including one created by or under any act of congress) and (a) is doing business in Wisconsin at the time of service, or (b) the cause of action against it arose out of the doing of business in Wisconsin, service may be made in accordance with the provisions of sec. 180.825 or by delivering within or without the state a copy of the summons to any officer, director, or managing agent of the corporation."

The testing machine being used by Fred Dettman at the time he received his injuries was sold to Edwards Pontiac Company by one Clarence M. Morgan in August, 1953.

The question involved is whether appellant was doing business in the state of Wisconsin within the meaning of sec. 262.09 (4), Stats. The trial court held that it was.

Clarence Morgan testified he had had a contract with the appellant company continuously from sometime prior to 1953. There is in evidence a contract between Morgan and

the company dated August 1, 1955, and denominated "Independent Dealer's Contract" wherein Morgan, as "dealer," is assigned the territory described as "Northwest portion of Wisconsin and Chicago, Illinois, area (radius of 150 miles around Chicago) (Exception)—Territory assigned Lyle Bergstrom June 1—1957." In said contract Morgan agreed "to act as dealer in said territory and to devote his full time and energy to the buying and selling of company equipment and merchandise." It was also agreed that "the dealer is to call on ALL prospective buyers in his assigned territory in a thorough manner; . . ." that "To fulfil contract dealer must sell company merchandise in the amount of $1,352 . . . retail price per month; . . ." that for a period of three years after termination of the contract the dealer would not sell any competitive commodity or equipment in the territory. The contract provides that mail orders received by the company from Morgan's territory will be credited to his account to apply on his next purchase of merchandise.

Under the contract Morgan was to pay cash for all merchandise ordered by him and shipments were to be made F.O.B., Waterloo, Iowa. He had to notify the company twice each month of all his sales by sending in the original sales slip and a card containing the purchaser's name, description, and quantity of merchandise sold, Morgan's signature and the purchaser's signature, nature of business of the purchaser, and date of sale. An identical card, except for the signatures, was to be sent to the local service center. Morgan was required to leave with each purchaser a guaranty card which he signed on behalf of the company.

There is also provision in the contract permitting Morgan, upon termination of the contract, to return to the company for refund any merchandise he may have on hand.

The service centers referred to are shops under contract with the appellant to repair Nelson products at the company's expense during the guaranty period and at the owner's ex-

pense outside of the guaranty period, the service center to buy all parts and supplies from the company. Morgan arranged for the establishment of the two service centers in Wisconsin. According to his testimony, he contacted them, persuaded them to service Nelson products and advised the company of their interest, whereupon the company entered into service contracts with them. The names and addresses of the service centers in Wisconsin are printed on the back of the instruction book put out by the company for distribution with machines sold.

Morgan testified that the company supplied him with order books, sales literature, and bulletins. The contract provides that all literature given to the dealer has the value of $50, which will be charged to the dealer in the event of termination of the contract unless the literature is returned. Morgan testified he solicited testimonials on the machine from his customers and used them in selling. Such testimonials, the evidence shows, were sent in to the company where they were reproduced for distribution to dealers generally for assistance in making sales. Paul Briner, appellant's vice-president, testified that the testimonials are not addressed to the dealers but to Nelson Tester Company.

Morgan testified that he operated from a house trailer (purchased with money loaned by the president of the company), and for about two years lived in Lake Geneva, Wisconsin, and had his daughter in school there. He devotes his full time to selling the Nelson tester and handles only one other item, the Hoit meter, which is also supplied to him by the appellant corporation.

Clarence Morgan is not the only "dealer" in Wisconsin. He personally trained Lyle Bergstrom, who owned the property where Morgan parked his trailer in Lake Geneva, and gave him part of his Wisconsin territory. L. O. Nelson, president of the appellant company, who has a "world-wide dealer's contract" with the company, also sells the Nelson

machines in Wisconsin. The company's record books list all three men as "salesmen," and show that hundreds of the machines have been sold in Wisconsin in the past few years.

Appellant contends that Morgan is an independent contractor and that the appellant is not doing business in Wisconsin. It is respondent's position that Morgan is an agent of the company; that the company's control over him and its other activities in Wisconsin constitute doing business in this state.

Morgan's possible status as an independent contractor is not material in this case. All the cases cited by appellant on this proposition are cases growing out of torts of an independent contractor or claims for workmen's compensation. We are not concerned with any such situations. This is not an action to hold the principal liable for the torts of the agent, but an action against the manufacturer itself for selling an inherently dangerous electrical device without giving warning of the danger to users thereof. The only question is whether Morgan's activities in Wisconsin and the appellant's control over his activities have been of such nature and extent as to constitute the doing of business in this state within the contemplation of sec. 262.09 (4), Stats.

For the determination of that question—although Morgan's status might be that of an independent contractor for other purposes—it must be held that he was appellant's agent. See Restatement, 1 Agency (2d), p. 13, sec. 2, comment *b*. This same view was taken in *Meyers v. Matthews* (1955), 270 Wis. 453, 71 N. W. (2d) 368, where plaintiffs, as alleged "independent contractors" under contract with a Missouri finance corporation (Metropolitan) solicited offers of assignments of accounts from Wisconsin merchants, doctors, and other creditors. This court said (pp. 468, 469):

"Metropolitan unquestionably is doing business, and it is doing that business with the aid of its solicitors. Therefore

when its solicitors are present in Wisconsin, Metropolitan is present and doing business in Wisconsin. The true relation shown by the evidence to exist between Metropolitan and its solicitors is one of principal and agent. It does not matter for the purposes of this case whether the respondents may be a type of independent contractor or not. We are not concerned here with tort liability or workmen's compensation. What is important here is that the solicitors are agents of Metropolitan.

". . . it is not important whether or not they are independent contractors from the standpoint of imposing liability upon Metropolitan for their torts."

Appellant's vice-president testified that the company's only means of distributing its products is through dealers who make it their full-time job to sell in territories defined by the company. Morgan and the other dealers operate under substantially identical "dealer" contracts.

All the facts respecting Morgan's activities in Wisconsin spell out control by the company. Morgan's territory included most of Wisconsin. It is admitted that he resided here for at least two years. Under his contract he was required to, and did, "devote his full time and energy" to soliciting sales of appellant's products. To fulfil his contract he had to sell a minimum of $1,352 worth of appellant's machines per month and report to the company detailed information respecting his sales on the first and sixteenth of each month. He was required to call on all prospective buyers and cover his territory in a thorough manner. Upon making a sale he signed for the company its one-year guaranty card and delivered it to the customer. The company established (through Morgan's initiative) service centers in Wisconsin for the repair of its product, the purpose admittedly being to facilitate and encourage sales of the Nelson tester in Wisconsin. Morgan and other "dealers" solicit testimonials from their customers in Wisconsin which are used by the company to promote sales. The exhibits show sales of appellant's product

made by these "dealers" to Wisconsin customers continuously from 1952 to the present time.

Business activity may be said to be the doing of some of the things or exercising within the forum state some of the functions for which the corporation was created. Sale of the company's product is one of the functions for which it exists. In the light of the facts recited above, it must be held that Morgan's activities in this state constitute the performance of that function. The contract under which he worked, everything he did pursuant to its terms, was for the promotion of the company's product; and the company had substantial control over his activities.

The rule applied in the most-recent cases is that constant or repeated solicitation of business by agents within this state is sufficient to constitute the doing of business in Wisconsin. *Huck v. Chicago, St. P., M. & O. R. Co.* (1958), 4 Wis. (2d) 132, 140, 90 N. W. (2d) 154. As indicated in that case, the trend has been toward expanding the scope of state jurisdiction over foreign corporations and other nonresidents. This court, adopting the view of the United States supreme court in *International Shoe Co. v. Washington* (1945), 326 U. S. 310, 66 Sup. Ct. 154, 90 L. Ed. 95, said:

"The court held that the test of jurisdiction did not depend upon drawing a line between solicitation and other activities but rather whether the foreign corporation had such minimal contacts with the state as would not offend the concepts of due process if the courts of the state subjected such corporation to their jurisdiction."

In the *Huck Case* this court so thoroughly dealt with the cases bearing upon the test of doing business that there is no need to discuss the authorities relied upon by appellant here. Clearly, under the facts of this case, there can be no doubt that Nelson Tester Company was doing business within Wisconsin, as contemplated by sec. 262.09 (4), Stats.

*By the Court.*—Order affirmed.